[603 NYS2d 21]

Barbara L. Sogg, Respondent-Appellant, v American Airlines, Inc., et al., Appellants-Respondents.

First Department, October 14, 1993

154

## APPEARANCES OF COUNSEL

*Martin I. Shelton* of counsel *(Steven E. Levitsky, Joseph E. Gulmi, Jacques M. Rimokh, Rosemary Halligan* and *Jennifer Krane* with him on the brief; *Shea & Gould* and *Weil, Gotshal & Manges,* attorneys), for appellants-respondents.

*Lester J. Tanner* of counsel *(Anders R. Sterner, Deborah Gunset* and *Scott Mautner* with him on the brief; *Tanner Propp Fersko & Sterner* and *Alexander J. Wulwick,* attorneys), for respondent-appellant.

*Nadine Taub* of counsel *(Women's Rights Litigation Clinic, Rutgers School of Law),* amicus curiae.

## OPINION OF THE COURT

ELLERIN, J.

The instant action is brought under the New York Human Rights Law (Executive Law § 290 *et seq.)* alleging that the plaintiff was initially deprived of a promotion and was thereafter terminated from her position with defendant American Airlines, Inc. (American) as a result of discrimination based on her sex, age and disability, i.e., a serious heart condition. A jury found in plaintiff's favor and awarded $3,394,173 in economic damages, $1,125,000 in damages for mental anguish and $2,250,000 against American and $305,000 against the individual defendants in punitive damages. Subsequently, the punitive damages awards were vacated and, additionally, the court ordered a new trial on the damages for mental anguish unless plaintiff agreed to reduce them to $400,000. Defendants appeal and plaintiff cross-appeals.

The standards relating to burden and order of proof in employment discrimination cases brought under the Human Rights Law are the same as those established by the United States Supreme Court in *McDonnell Douglas Corp. v Green* (411 US 792, 802-804) and *Texas Dept. of Community Affairs v Burdine* (450 US 248, 252-253) for cases brought pursuant to

Title VII of the Civil Rights Act of 1964 *(Matter of Miller Brewing Co. v State Div. of Human Rights,* 66 NY2d 937; *Ioele v Alden Press,* 145 AD2d 29, 35). The three-step process laid out in those cases requires that, first, the plaintiff establish a prima facie case of discrimination. If the plaintiff sustains this burden, the defendant must offer rebuttal evidence articulating a legitimate, independent, nondiscriminatory reason for its actions. Once defendant does so, in order to prevail plaintiff must prove, by a preponderance of the evidence, that the defendant's stated reasons are only a pretext for discrimination *(Texas Dept. of Community Affairs v Burdine, supra,* at 252-253; *Matter of Miller Brewing Co. v State Div of Human Rights, supra,* at 938-939). The ultimate burden of persuading the finder of fact that an employer unlawfully discriminated against the plaintiff remains at all times with the plaintiff *(St. Mary's Honor Ctr. v Hicks,* 509 US —, 125 L Ed 2d 407; *Texas Dept. of Community Affairs v Burdine, supra,* at 256; *Ioele v Alden Press, supra,* at 35).[1]

To satisfy the first step in this three-step process and make out a prima facie case,[2] plaintiff was required to establish that she was in a group protected by the statute, that she was qualified for the position in question, that she was denied the position, and that that denial occurred "under circumstances which give rise to an inference of unlawful discrimination" *(Texas Dept. of Community Affairs v Burdine, supra,* at 253). That inference may be drawn from direct evidence, from statistical evidence, or merely from the fact that the position was filled or held open for a person not in the same protected class *(Ashker v Intl. Bus. Machs. Corp.,* 168 AD2d 724, 725;

---

1. While plaintiff has proceeded throughout this litigation upon the theory that defendant's stated reasons for its decisions were pretextual, and we will therefore deal solely with such analysis, it should be noted that, since its decision in *Texas Dept. of Community Affairs v Burdine (supra),* the Supreme Court has held that a plaintiff who fails to make such a showing may still prevail if he or she instead demonstrates that discrimination played a role in the employment decision and defendant fails to establish, as an affirmative defense, that the decision would have been the same regardless of the discriminatory factor *(see, Price Waterhouse v Hopkins,* 490 US 228).

2. As noted by the Court in *Texas Dept. of Community Affairs v Burdine (supra,* at 254, n 7), the term " 'prima facie case' " is used here to denote the establishment by plaintiff of facts sufficient to create a "legally mandatory, rebuttable presumption," rather than the more traditional meaning of describing plaintiff's burden of setting forth sufficient evidence to go before the trier of fact.

*Ioele v Alden Press, supra,* at 35; *Mayer v Manton Cork Corp.,* 126 AD2d 526).

■ With respect to plaintiff's claim that she was deprived of a promotion based on discrimination, we find that the jury verdict in plaintiff's favor is amply supported by the evidence. Plaintiff claimed that in 1984 she was deprived of a promotion to the position of General Manager of defendant American's facilities at LaGuardia Airport. At that time plaintiff was employed, after a 27-year career at American commencing as a flight attendant, as its Flight Services Manager for La-Guardia Airport, where she supervised 1,000 flight attendants. Plaintiff's claim is based on the fact that defendant Jerry R. Jacob, a vice-president in charge of the Eastern Division of American, promoted 36-year-old defendant Robert Zurlo to the position of General Manager of American's facilities at La-Guardia, thereby making Zurlo plaintiff's immediate supervisor. Although applications were not solicited for the promotion, plaintiff's personnel file left no question that her career goal was to become a General Manager at a major airport, a position to which Jacob had never promoted a woman.

In addition to considerable evidence upon which the jury could base a finding that Zurlo's qualifications were inferior to those of plaintiff, who was then 46, plaintiff's argument that she was discriminated against is also based on evidence, which is undisputed by American, that plaintiff was not even considered for the promotion as a result of Jacob's action, first taken in 1979, of labelling plaintiff nonpromotable under any circumstances, the lowest of 11 possible promotability ratings. This rating was received by plaintiff as part of her yearly evaluation, which covered two over-all categories, job performance and promotability. Plaintiff's first rating of nonpromotable was given to her by Jacob at or about the same time she was hospitalized for open heart surgery and only a few months after her supervisor and his supervisor had given her an over-all job performance rating of "2", indicating that in her first year as Flight Services Manager at LaGuardia her performance had exceeded the requirements of her job. At the same time, they had set forth a plan for her to accomplish her career goal of General Manager. Plaintiff was, without her knowledge, labelled nonpromotable every year after that. No other testimony or documentary evidence was offered by defendants to support Jacob's testimony that his rating of nonpromotable was based on recommendations he received from plaintiff's then supervisors, one of whom was no longer

alive and two of whom were not called to testify and all of whom had participated in her consistently high job performance ratings. Moreover, Jacob himself testified that, up until the mid-eighties, Flight Services, which primarily involved the supervision of flight attendants, was considered a "normal career path" for women, and the step from that position to other areas of airport management had rarely been accomplished by women. In his opinion, this was because prior to the mid-eighties few women had aspired to be General Manager or to enter other areas of airport management such as ramp or freight services. Furthermore there was evidence that, in 1983-1984, the year of Zurlo's promotion, only one woman in plaintiff's grade or above had been rated promotable by Jacob.

The foregoing evidence amply supports the jury's verdict finding that plaintiff was discriminatorily deprived of a promotion and should not be disturbed. Plaintiff clearly established a prima facie case by demonstrating that she was entitled to protection based on sex and age and we find that she presented sufficient evidence concerning her serious heart condition to establish that she was also in a protected class as to disability. She additionally established that she was qualified for the promotion, that she wanted the promotion and was denied it, and that the promotion was given to someone outside the same classes of sex, age, and protected disability. It was well within the jury's province to reject defendants' proffered reasons for giving the promotion to Zurlo as merely a pretext for the fact that the plaintiff was denied the promotion for discriminatory reasons. Not only was there sufficient evidence to find that Zurlo was not more qualified for the position than was plaintiff, but the jury was also entitled to reject defendants' subsidiary self-serving argument that the nondiscriminatory reason plaintiff was not promoted was because she was labelled nonpromotable. The jury was fully entitled to examine the circumstances under which that label was given and determine whether the label itself was a subterfuge for discriminatory intent.

■ Indeed, defendants do not, on this appeal, strongly contest the finding that plaintiff was denied the promotion for discriminatory reasons but they do argue vigorously that plaintiff failed to establish a prima facie case on her related claim that, 11 months subsequent to her failure to receive the promotion, she was discriminatorily terminated.

In addition to the evidence upon which her promotion claim

was based, the evidence at trial with respect to the termination claim showed that, at or about the same time that Zurlo, rather than plaintiff, was promoted to General Manager of American's services at LaGuardia, Patsy Underwood, who was the Senior Director of Flight Services at the company headquarters in Dallas, began to work on a plan to reorganize Flight Services on a nationwide basis. The reorganized plan called for the promotion to the new position of Area Manager of Flight Services for New York, which covered both LaGuardia and JFK Airports, to go to Vicki Bravo, who was a few years younger than plaintiff and who was, prior to her promotion to the new position, plaintiff's counterpart at JFK. Since the reorganization called for the combination of plaintiff's and Bravo's jobs, plaintiff's job was eliminated. Before the reorganization was even effective, plaintiff was told by Underwood that there was no job for her in Flight Services anywhere in the country and was ordered to go directly home and never to return to LaGuardia. This was not customary procedure for someone whose job was eliminated. Plaintiff, however, was then specifically told that the elimination of her position was not related to her job performance and that a system-wide job search was to be made for her. Defendants concede, however, that no such search was made, and plaintiff was subsequently terminated. This failure to take steps to assure plaintiff a place in the company, if possible, was in direct contravention of American's own procedures, as outlined in its personnel manual.

The concession by defendants that no job search was made for plaintiff, contrary to its own usual practice, clearly supports the finding that plaintiff's termination was not made in good faith. Indeed, according to defendant Jacob's own testimony, had such a search been made, a position would easily have been found for someone with plaintiff's credentials. We note that Jacob's additional testimony that plaintiff was not offered another position because she allegedly told him privately that she refused to leave New York or to take a lower graded position at the same pay is not supported by any documentary evidence and we find no reason to disturb the jury's rejection of it.

Additional support for a finding of a lack of good faith is provided by evidence that substantial efforts were made during the 11 months between the denial of the promotion to plaintiff and her termination to undermine her job performance evaluation. While, since 1981, plaintiff had received an

over-all performance rating of "2", indicating that she exceeded her job's requirements, in 1984, she received an over-all rating of "3", indicating that she merely met her job's requirements, and there was evidence indicating that this rating was changed to "3" by Jacob after plaintiff's then supervisor had originally given her a rating of "2". Moreover, as soon as plaintiff's new supervisor, defendant Zurlo, assumed his position in 1984, he admittedly began to deliberately record any negative comments he was able to obtain concerning plaintiff. He did not follow this procedure with his other subordinates. Zurlo also admitted that he consistently pressured plaintiff to admit that there were problems in her division, which she refused to do. Indeed, the evidence demonstrated that, at one meeting, defendants Treiber and Zurlo insisted that plaintiff concede that there was a problem in her department before she would be permitted to leave the meeting and threatened her that, if she did not develop a plan to correct it, someone else would be found to do so. Particularly in light of the lack of extrinsic evidence concerning the existence of such serious problems, along with the evidence of plaintiff's prior consistently high performance ratings, the jury was entitled to draw from this evidence the inference that efforts were being made to unfairly undermine plaintiff's record. While ultimately such efforts may have been unsuccessful, the very fact that such efforts were made is clearly further evidence of a lack of good faith.

Defendants argue that, regardless of the evidence of unfair treatment resulting in plaintiff's termination, they may not be held liable under the Human Rights Law unless that treatment was motivated by a discriminatory intent *(see, Ioele v Alden Press,* 145 AD2d, *supra,* at 36-37), which, they argue, has not been proven. However, in evaluating whether discriminatory intent has been proven, it must be recalled that "one intent on discriminating 'cannot be expected to declare or announce his purpose. Far more likely is it that he will pursue his discriminatory practices in ways that are devious, by methods subtle and elusive.' " *(Matter of Imperial Diner v State Human Rights Appeal Bd.,* 52 NY2d 72, 77, quoting *Matter of Holland v Edwards,* 307 NY 38, 45.) Obviously, plaintiff could not be expected to establish that the defendants actually expressed their discriminatory intent, and the record must therefore be examined as a whole in order to ascertain whether, in light of all the circumstances, the evidence supports a finding of such intent *(City of Schenectady v State Div.*

*of Human Rights,* 37 NY2d 421, 427). In this case, we find that the record overwhelmingly supports such a finding in light of the evidence that only 11 months before her termination plaintiff was denied a promotion on discriminatory grounds and, indeed, had been rated nonpromotable for five years on discriminatory grounds. It is almost impossible to draw any inference other than that, given defendants' discriminatory decision that plaintiff was going no further in the company, plaintiff's termination, in bad faith, only 11 months later, after an 11-month campaign to undermine her reputation, was motivated not only by those same discriminatory reasons but by plaintiff's having become, as a direct result of defendants' promotional discrimination, an undesirable presence due to the awareness on both sides that she had been unfairly treated.

Contrary to the position of the dissent, we do not find that plaintiff is limited to showing that the discrimination against her was based exclusively on her disability because the person who was chosen to fill the position which encompassed plaintiff's prior position, i.e., Vicki Bravo, was a woman of comparable age *(see, Flynn v Goldman, Sachs & Co.,* 1993 WL 336957 [SD NY, Sept. 2, 1993, Wood, J.]), or because of the evidence cited by the dissent demonstrating that a substantial proportion of the persons who were displaced by the reorganization were female, middle-aged Flight Services Managers, and only one, or at most two, were not placed. Having shown by direct evidence that she was discriminated against, it was not necessary that plaintiff show that all other members of each class were also discriminated against. As noted by the Court of Appeals, "The statute prohibits discrimination, and not just repeated discriminatory acts" *(Matter of Imperial Diner v State Human Rights Appeal Bd.,* 52 NY2d 72, 78, *supra).* Most significant, however, is the fact that plaintiff's claim that she was discriminatorily terminated is not based on a theory that the company was reluctant to have a woman in her forties employed as a Flight Services Manager, which it clearly was not, but on the theory that, because of the combined factors of her sex, age, and disability, along with the very recent denial of a promotion on discriminatory grounds which kept her from going further in airport management than Flight Services Manager, she was no longer considered a desirable employee and was, for that reason, not found a new position.

The jury, of course, was entitled to consider evidence concerning other women and other persons of plaintiff's age in

determining whether plaintiff had satisfied her ultimate burden of disproving, by a preponderance of the credible evidence, defendants' argument that plaintiff's termination was not discriminatory, but was the result of a belief, whether justified or mistaken, that she would not relocate or take a lower graded job or, at worst, was the result of a management decision which, even if unfair, was not biased. However, in this case, the jury rejected defendant's argument that Bravo's promotion and the placement of other women displaced by the reorganization demonstrated that plaintiff was not discriminated against, and we find no basis to disturb that finding.

What both the defendants and the dissent ignore is the fact that under the circumstances here present the jury was not required to view the denial of promotion to plaintiff and her subsequent termination as two completely separate and discrete incidents of discrimination but, rather, was entitled to view them as an unbroken continuum, with discriminatory denial of the promotion serving as the direct consequential catalyst of the ultimate termination of plaintiff's employment *(see, Flynn v Goldman, Sachs & Co., supra,* 1993 WL 336957). Fortunately, the law recognizes that the forms and guises of discriminatory conduct do not always fall neatly into readily identifiable packages and affords relief so long as the victim can establish that the conduct occurred "under circumstances which give rise to an inference of unlawful discrimination" *(Texas Dept. of Community Affairs v Burdine, supra,* at 253). For these reasons, we find that the evidence, taken as a whole, was more than sufficient to *"permit* the trier of fact to infer the ultimate fact of intentional discrimination" *(St. Mary's Honor Ctr. v Hicks, supra,* 509 US —, —, 125 L Ed 2d 407, 418) in terminating plaintiff and thus to support the jury's verdict finding that plaintiff had met her burden of persuasion on that claim.

While, as indicated, we are sustaining plaintiff's discriminatory termination claim, we note that, even if such finding were not mandated by the evidence, and plaintiff were to prevail only on the denial of promotion claim, we could not find, as has the dissent, that the damages properly due plaintiff on the latter claim are $4,293. The jury's finding limiting the economic damages due to plaintiff on her promotion discrimination claim to only $4,293, which was based on the difference between her salary in her position as Flight Services Manager and what her salary would have been as General Manager as computed over an 11-month period, was

obviously due to its tandem finding that defendants had additionally discriminated against plaintiff in terminating her, and awarding her over $3 million on that count. Since the total damages awarded fully compensated plaintiff for all her economic loss due to the discriminatory conduct, the precise manner of its allocation was of little moment to the jury. However, it is clear that a proper computation of plaintiff's damages on her promotion discrimination claim, were it to be considered on its own, would necessarily have to take into account the fact that, had plaintiff been promoted to the position of General Manager, her new position would not have been eliminated by the reorganization of Flight Services 11 months later but would have continued until her retirement, and her damages would be predicated on that basis.

■ Turning to the other issues raised on the appeal, we find that the record does not support defendants' assertion that they were deprived of a fair trial. Both the court's marshalling of the evidence and its charge accurately set forth the evidence adduced and the appropriate legal principles. We note that the one misstatement cited by the dissent, i.e., that defendants acknowledged that plaintiff's heart condition could be considered a disability, was not objected to by counsel and is, therefore, not preserved for review. In any event, in the context of the charge as a whole, which clearly stated that it was plaintiff's burden to establish that she was a member of a protected class, and in light of the primary focus on the gender discrimination claim, we find that this remark could not have improperly influenced the jury. Nor is there merit to the contention that the conduct of plaintiff's counsel was inappropriate.

■ On the issue of damages, in light of all of the circumstances, the trial court's reduction of the award for mental anguish to $400,000 afforded reasonable compensation for the injury demonstrated here (CPLR 5501 [c]) and the award of punitive damages was properly vacated (*Thoreson v Penthouse Intl.*, 179 AD2d 29, *affd* 80 NY2d 490). However, in light of the evidence presented on the question of plaintiff's efforts to mitigate her damages by obtaining suitable employment, the verdict was excessive in the amount of $1,219,784 and a new trial on damages should be held unless the parties stipulate to reduce the verdict by that amount.

Finally, we deny plaintiff's request for reimbursement of the costs of producing the supplemental Appendix on appeal.

We have considered all other claims and find them to be without merit.

Accordingly, the judgment of the Supreme Court, New York County (Beatrice Shainswit, J.), entered June 4, 1992, after a trial by jury, which, *inter alia,* awarded plaintiff $3,794,173 plus interest, costs and disbursements, should be reversed, on the law, the facts and in the exercise of discretion, and the matter remanded for a new trial on the issue of damages only, without costs and disbursements, unless plaintiff stipulates, within 20 days from the date hereof, to reduce the verdict against defendants to the principal sum of $2,574,389, and to the entry of an amended judgment in accordance therewith. In the event plaintiff so stipulates, the judgment as so amended and reduced should be affirmed, without costs.

WALLACH, J. (dissenting in part). I join my colleagues in affirming that portion of the judgment appealed from which awarded a recovery of $4,293 for a discriminatory denial of promotion to the position of General Manager of LaGuardia Airport, where the job was awarded in March 1984 to an arguably less qualified younger male, and the jury, on conflicting proof, was free to resolve the question in plaintiff's favor. I part company with them on affirmance of the balance of the judgment based on alleged discriminatory discharge in January 1985, and would remand for a new trial upon the single issue of disability discrimination.

In *Ioele v Alden Press* (145 AD2d 29, 35), this Court defined the elements of a prima facie discriminatory termination case as follows: "In the absence of direct or statistical evidence 'logically related to a differential treatment of employees on the basis of age in order to support an inference' of discrimination [citation omitted], both of which are concededly absent here, plaintiff may establish a prima facie case only if he can demonstrate that he was *in a protected age group;* that he was terminated; that he was sufficiently qualified to continue holding his position; and that his *position was subsequently filled by a younger person or held open for a younger person."* (Emphasis added.)

This definition of the prima facie test is accepted by the courts of the State of New York for all forms of prohibited discrimination, with the appropriate changes of the protected category from age, to sex, handicap, religion or race. *(Matter of O'Connor v Frawley,* 175 AD2d 781 [age]; *Ashker v International Bus. Machs. Corp.,* 168 AD2d 724, 725 [age and mental

disability]; *Stewart v International Bus. Machs. Corp.,* 156 AD2d 128, *lv denied* 76 NY2d 701 [racial hiring]; *Brown v General Elec. Co.,* 144 AD2d 746, 748 [age]; *Mayer v Manton Cork Corp.,* 126 AD2d 526 [age]; *Camillo v Coca-Cola Bottling Co.,* 776 F Supp 662, 664, *affd* 962 F2d 2 [age].)

In this action, plaintiff's wrongful termination claim was that after her promotion was blocked she was fired by defendant American Airlines from her position as Manager of Flight Services because of illegal considerations of gender, age and disability, factors specifically condemned under Executive Law § 296. Yet plaintiff's own proof was that after the general personnel reorganization plan developed by another senior female executive of the corporation, Patsy Underwood, was effectuated, the ultimate outcome was plaintiff's replacement by Vicki Bravo, a woman previously serving as a group supervisor at Kennedy Airport. Thus the essential fourth element of a prima facie case, i.e., replacement by another in an unprotected group, is fatally absent.

The age discrimination claim also fails because plaintiff, at age 46, was replaced by Bravo, age 43. Modest age disparities such as this have been held insufficient to support an age discrimination claim *(Heffernan v Colonie Country Club,* 160 AD2d 1062, 1063; *Estepa v Shad,* 652 F Supp 567).

Nor can it be said that plaintiff provided any "direct or statistical evidence" to support an inference of sex or age discrimination as the cause of her discharge. Unrebutted in the record is defendants' proof that of the 20 American Airlines employees nationwide whose jobs were "surplused out" by the Underwood reorganization plan, 17 were women and at least seven were over 40 years of age. Of these 20 employees, 19 either retained their position, were placed in other jobs, or were offered new jobs. A sole controversy arose with respect to the situation of Clancie Melton, a 60-year-old female employee. Plaintiff testified that Ms. Melton was not offered employment, but this testimony contradicted plaintiff's deposition testimony that Ms. Melton "was not laid off" and that "she was offered a job."

Thus, the gender- and age-based causes of action should have been dismissed by the trial court as a matter of law. The disability claim, however, stands on a different footing. It appears that in 1979 plaintiff underwent surgery for a heart valve replacement and required more than a three-month recuperative period. Defendants strenuously argue that there

is no proof of plaintiff's disability after that period. This, however, is not entirely dispositive; the issue is not simply whether plaintiff was in fact disabled, but whether plaintiff was wrongly *perceived as disabled* by her superiors and discriminated against on that account *(Doe v Roe, Inc.,* 160 AD2d 255, 256). The disability discrimination claim thus raised a triable issue.

Unfortunately, defendants did not receive a fair trial on this aspect of the case, in view of the trial court's erroneous charge that defendants "acknowledge that [plaintiff] had had heart surgery that could be characterized as a continuing disability." In fact there was no such "acknowledgment". On the contrary, this was a highly disputed contention, at the very core of plaintiff's claim on this aspect of the case, and it was fundamental error for the court to remove this issue from the jury's evaluation.

Furthermore, I cannot agree that plaintiff's wrongful discharge claims based on gender and age discrimination can be salvaged by the majority's conclusion that the jury "was entitled to view them as an unbroken continuum, with discriminatory denial of the promotion serving as the direct consequential catalyst of the ultimate termination of plaintiff's employment." Her causes of action for wrongful termination, and her ensuing discharge, were discretely pleaded and separately submitted to the jury which rendered special verdicts as to each alleged wrong. The majority's supposition that the jury, in its damage award, was only concerned with its totality, and with respect to its components "the precise manner of its allocation was of little moment to the jury," provides no support for the viability of this novel "unbroken continuum" theory. On the contrary, since we are not privy to the jury's deliberations, it is nothing more than sheer speculation, wholly at odds with the latest United States Supreme Court pronouncement on the subject *(St. Mary's Honor Ctr. v Hicks,* 509 US —, 125 L Ed 2d 407), which holds that an employment discrimination claim must rest entirely on its own proofs, without any buttressing reference to extraneous matters such as any exculpatory evidence offered by the employer which the trier of fact elects to reject as pretextual. Thus it would seem to follow that any surfeit of proof here on the promotional grievance is unavailable to shore up the deficiencies in the discharge claims.

Accordingly, I would vacate so much of the judgment as was grounded on gender- or age-based discriminatory discharge,

and would remand for a new trial solely upon plaintiff's cause of action for disability discrimination.

CARRO, J. P., ROSENBERGER and RUBIN, JJ., concur with ELLERIN, J.; WALLACH, J., dissents in part in a separate opinion.

Judgment, Supreme Court, New York County, entered June 4, 1992, reversed, on the law, the facts and in the exercise of discretion, and the matter remanded for a new trial on the issue of damages only, without costs and disbursements, unless plaintiff stipulates, within 20 days of the date of the order to be entered hereon, to reduce the verdict against defendants to the principal sum of $2,574,389, and to the entry of an amended judgment in accordance therewith. In the event plaintiff so stipulates, the judgment as so amended and reduced is affirmed, without costs.