■ In the Matter of NEW YORK STATE OFFICE OF MENTAL HEALTH, KIRBY FORENSIC PSYCHIATRIC CENTER, Petitioner, v NEW YORK STATE DIV. OF HUMAN RIGHTS et al., Respondents. (Proceeding No. 1.) In the Matter of STANLEY D. DOMINGO, Petitioner, v NEW YORK STATE DIVISION OF HUMAN RIGHTS et al., Respondents. (Proceeding No. 2.) [619 NYS2d 874] —Mikoll, J. P. Proceedings pursuant to Executive Law § 298 (transferred to this Court by order of the Supreme Court, entered in Albany County) to review a determination of respondent State Division of Human Rights which found the State Office of Mental Health, Kirby Forensic Psychiatric Center guilty of discriminatory practices based on gender and race.

Stanley D. Domingo was employed as a security hospital treatment assistant (hereinafter SHTA) for the State Office of Mental Health at its Kirby Forensic Psychiatric Center (hereinafter Kirby) in New York City. Kirby terminated Domingo for unsatisfactory attendance during a probationary period that Domingo had agreed to serve as a result of previous time and attendance violations. Domingo filed a complaint with respondent State Division of Human Rights (hereinafter the Division) alleging that he was discriminated against based on race. The complaint was later amended to include an allegation of discrimination based on gender. The matter was referred to a hearing at which an Administrative Law Judge (hereinafter ALJ) issued a decision and order finding that Kirby had discriminated against Domingo on the basis of his race and gender. The ALJ recommended, *inter alia,* that Domingo be awarded back pay in the amount of $13,454.92 and damages of $75,000 for mental anguish, and that he be reinstated to his position. On appeal to the Commissioner of the Division, the Commissioner issued a corrected order which upheld the decision of the ALJ as to his findings of discrimina-

tion and to his award of back pay and damages for mental anguish, but declined to order reinstatement.

Kirby commenced a proceeding pursuant to Executive Law § 298 seeking review of the order as not supported by substantial evidence and Domingo commenced a similar proceeding seeking review of the order to the extent that it failed to direct his reinstatement. The matters were consolidated and transferred to this Court for review.

In order to make out a prima facie case of employment discrimination, a petitioner must demonstrate that (1) he or she is a member of a protected class, (2) he or she was qualified for the subject position, (3) he or she was discharged from the position, and (4) the discharge occurred " 'under circumstances that give rise to an inference of unlawful discrimination' " (Sogg v American Airlines, 193 AD2d 153, 155-156, lv dismissed 83 NY2d 846, lv denied 83 NY2d 754, quoting Texas Dept. of Community Affairs v Burdine, 450 US 248, 253).

Once the petitioner makes out a prima facie case, the respondent "must offer rebuttal evidence articulating a legitimate, independent, nondiscriminatory reason for its actions" (supra, at 156). If the respondent does so, the petitioner "must prove, by a preponderance of the evidence, that the [respondent's] stated reasons are only a pretext for discrimination" (supra). The burden remains upon the petitioner at all times (see, supra).

In this case, the Commissioner found that Domingo had been discriminated against based on gender in that Kirby had not enforced its time and attendance policy as stringently with female SHTAs as with Domingo, nor had it ever put any female SHTAs on disciplinary probation for having violated its time and attendance policy as it did with Domingo. The Commissioner found that Domingo had also been discriminated against based on his race because Kirby had used "last chance" probationary agreements as a means of disciplining black male SHTAs for time and attendance violations and had not done the same with white SHTAs.

Observing the deference accorded the Commissioner in her area of expertise (see, Matter of State Div. of Human Rights [Cottongim] v County of Onondaga Sheriff's Dept., 71 NY2d 623, 630), we turn to the question of whether her findings are based on substantial evidence. We first observe that Domingo's treatment was in accordance with Kirby's disciplinary policy, under which time and attendance disciplinary infractions

were typically negotiated with the employee. Kirby initially sought a fine of $50 on the first notice of discipline, but upon negotiation with the employee it would settle for a letter of reprimand. On the second notice of discipline, Kirby sought a fine of $200, but would settle for forfeiture of one day's leave credits. On the third notice, Kirby sought a larger fine or the forfeiture of two to four weeks of leave credits, but would settle for a fine equivalent to one to two weeks of salary or the forfeiture of the equivalent amount of leave credits. On the fourth notice of discipline, Kirby sought termination, but would settle for probation, a fine or both.

The record discloses that Domingo received four notices of discipline. Prior to receiving his first notice, Domingo was formally counseled for numerous time and attendance violations occurring between July 8, 1986 and January 28, 1987.[1] The first notice of discipline was issued in November 1987 as a result of Domingo's being late for work on 19 occasions (a total of 403 minutes) and for unscheduled absences on 18 occasions (a total of 585 minutes) between February 1, 1987 and November 9, 1987.[2] As a result of this notice, Domingo received a letter of reprimand in his personnel file.

Domingo received a second notice of discipline in April 1988 for being late to work on eight occasions (a total of 170 minutes) between November 24, 1987 and April 27, 1988. He received a $100 fine or, alternatively, was permitted to forfeit one vacation day. Domingo's third notice of discipline was issued in June 1989 as a result of being late to work on 16 occasions (a total of 301 minutes) and being absent from work without authorization on two occasions (a total of 16 minutes) since the previous notice. This notice was settled by a fine of $600.

Domingo's fourth and final notice of discipline was issued on February 20, 1990 for being late to work on six occasions (a total of 116 minutes) and having six unauthorized absences between June 28, 1989 and February 20, 1990. This notice was settled by imposing a $1,342 fine and a one-year period of

---

1. The time and attendance records kept track of tardiness, unscheduled absences and unauthorized absences. An unscheduled absence occurs when an employee who was scheduled to work calls in to inform his or her supervisor that he or she cannot work, while an unauthorized absence occurs when an employee who is scheduled to work simply does not report to work and does not call in.

2. Domingo had evidently been reprimanded on February 1, 1987 for the same misconduct, at which time he received formal counseling. Prior to that, he received his first warning for tardiness in December 1985.

probation, incorporated into a "last chance" agreement, providing that during the one-year probationary period Domingo was required to comply with certain time and attendance requirements. Domingo was represented by two union representatives when he entered into the negotiated agreement. During this one-year period, he was prohibited from having any unauthorized absences or more than 6½ days of unscheduled absences and, within any accrual period, two instances of tardiness or any instance of tardiness in excess of 15 minutes. Nonetheless, due to the fact that Domingo incurred 17 instances of tardiness and eight days of unscheduled absences within this one-year period, Kirby terminated his employment effective April 13, 1991.

The record discloses that Kirby's treatment of Domingo conformed to its issued disciplinary policy governing all employees. We disagree with the Commissioner's conclusion that the time and attendance records of the female SHTAs, used by her in comparison, support the conclusion that Domingo was treated substantially differently than the female SHTAs. The Commissioner constructed a statistical analysis of the average measure of time and attendance violations (hereinafter TAVs) per month pursuant to which she found that four female SHTAs, compared to Domingo, averaged significantly more time and attendance violations per month. The Commissioner based her conclusion of gender discrimination on the TAV analysis, as well as a letter written by Kirby's Affirmative Action Administrator. We find that the basis of the Commissioner's decision is flawed and not supported by substantial evidence.

The TAV analysis ignores Kirby's system of progressive discipline under which certain employees may have been more severely disciplined depending on the number of previous disciplinary infractions. Moreover, the TAV analysis detects any instance of tardiness and any unauthorized or unscheduled absence. The TAV average was computed by dividing the number of months from the first day of the period covered by a first notice of discipline to the last day of the period covered by the last notice of discipline by the total number of time and attendance violations during the entire period.[3]

We find that the TAV analysis fails to support the Commissioner's finding of gender discrimination. Initially, the use of

3. Examining the figures in paragraphs 23 and 24 of the Commissioner's decision, the manner in which the Commissioner computed the average is indicated.

only four female SHTAs is too small a sample to be a reliable indicator of discrimination *(see, Haskell v Kaman Corp.,* 743 F2d 113, 119; *Pirone v Home Ins. Co.,* 559 F Supp 306, 312, *affd* 742 F2d 1430). In addition, the TAV analysis has no relationship to the manner in which Kirby disciplined employees for time and attendance abuse. The TAV analysis also fails to account for the differences in the number of months over which each employee accumulated their time and attendance violations[4] and contains errors in computation. As a result, it does not reflect the severity of the violations during certain periods or reveal the improvements in time and attendance made by employees during other time periods. We hold that the TAV analysis is not a precise measure of comparison and reject it as evidence of a discriminatory gender practice.

Leaving aside the rejected TAV analysis and turning to the data in the record, we note that prior to receiving his fourth notice of discipline, Domingo was interviewed by management in what was denominated as an "interrogation". Prior to such proceeding, Domingo signed a "bill of rights" in which he was informed that he was entitled to be represented.

Based on the relevant evidence, we find that Domingo was not treated differently as to his first three notices of discipline from three of the female SHTAs, namely Beverly Campbell, Charmaine Lovell and Carolyn Wallace. We cannot concur with the Commissioner's finding that of these SHTAs and Lunora Caviness (who reached the fourth level of discipline as did Domingo), only he, the one male, was placed on probation and ultimately terminated as indicative of gender discrimination. Each employee charged with time and attendance violations had two options. Each had a right to have the charges heard and determined at binding arbitration or each could settle the fourth notice of discipline for a one-year probationary period and a fine. Both Caviness and Domingo declined binding arbitration and negotiated a settlement. Caviness settled for a fine of $2,652.56 in lieu of probation and Domingo settled for a one-year probationary period and a fine of $1,342. We note that he was represented by two union officials at the settlement proceeding. We find no gender discrimination in the settlement voluntarily entered into by Domingo as opposed to the settlement made by Caviness.[5] Each was treated

---

4. For example, Domingo was on leave for a significant part of the July 1987 to July 1988 period, but the entire time was used in computing his average TAV, thus artificially lowering his average.

5. Caviness was suspended on February 22, 1992 as unfit to work due to illness.

in like fashion and chose from the options open to both of them.

The Commissioner's finding of gender discrimination was also based on the Affirmative Action Administrator's letter. The record discloses that the letter was offered at the hearing not for its substantive content, but solely for the purpose of establishing the manner in which Kirby selected certain personnel files in conducting its investigation. Accordingly, the Commissioner's reliance on it to support gender discrimination is rejected.

Turning next to the Commissioner's finding of race discrimination, the Commissioner based this finding on evidence that Kirby used disciplinary probation on four black male SHTAs and had never placed a white SHTA on probation. The only evidence on this point came from Janet Ravida, Kirby's Personnel Director. She testified that disciplinary probations had been used on six occasions, four involving men and two involving women. She did not testify as to the race of these individuals. The parties appear to concede that they were all black. We note that no evidence was placed in the record comparing the time and attendance records of black SHTAs who were placed on disciplinary probation with white SHTAs who had analogous records but who had not been placed on disciplinary probation. Without such comparison, no conclusion can be reached of racial discrimination. The record discloses that the majority of SHTAs employed by Kirby during the time in question were black males. Ninety percent of the SHTAs were of minority ethnicity and of these a vast majority were black. Therefore, we find that Domingo has failed to make out a prima facie case of racial discrimination as well.

Mercure, Crew III, White and Yesawich Jr., JJ. concur. Adjudged that the determination is annulled, without costs, petition in proceeding No. 1 granted and petition in proceeding No. 2 dismissed. [As amended by unpublished order entered May 16, 1995.]