Michael BONITCH, Plaintiff,

v.

**The ORIGINAL HONEY BAKED HAM COMPANY OF THE EAST, INC., Defendant.**

No. CV 97–3995 (ADS).

United States District Court, E.D. New York.

Feb. 19, 1999.

David M. Fish, New York City, for plaintiff.

Gallagher Gosseen Faller Kaplan & Crowley, New York City (Robert I. Gosseen, of counsel), for defendant.

### MEMORANDUM OF DECISION AND ORDER

SPATT, District Judge.

The plaintiff, Michael Bonitch ("Bonitch" or the "plaintiff"), initiated this action against his former employer, The Original Honey Baked Ham Company of the East, Inc. ("HBH" or the "defendant"), on July 14, 1997 by filing a complaint alleging employment discrimination under the Americans With Disabilities Act ("ADA") and the New York Executive Law § 290 *et seq.* (the "Executive Law"). At issue is the defendant's motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure seeking dismissal of the plaintiff's complaint.

### I. BACKGROUND

Except where otherwise indicated, the following facts are not in dispute. The plaintiff was hired at HBH on April 7, 1992 as an assistant manager of the defendant's Commack, New York store. In April 1993, he was promoted to manager of that store. In that position, he was required to hire and train new employees, handle any customer service issues that arose, fill orders for needed supplies and oversee and delegate duties to the other staff employees. In March 1997, the plaintiff was transferred to HBH's Levittown, New York store where he worked until he was discharged on April 7, 1997.

Over the course of his employment, the plaintiff generally received good evaluations, although on certain occasions he was given constructive criticism on ways to better conform with the policies of HBH. For example, the plaintiff received an evaluation on January 20, 1993, wherein he was referred to as a "responsible individual" who should soon be able to manage his own store. Similarly, in June 1993, Bonitch was evaluated and received a positive evaluation for his performance. In April 1994, however, Bonitch's district manager, Steven Gaiser, cautioned him that he needed to make improvements in his job performance including his image, leadership, and appearance.

In September 1995, the plaintiff began to suffer from a thyroid condition. In January 1997, Bonitch was diagnosed with Graves' disease, which is an endocrine disorder that affects the thyroid gland. The common signs of Graves' disease are "(1)goiter; (2) tachycardia; (3) widened pulse pressure; (4) warm, fine, moist skin; (5) tremor; (6) eye signs . . .; and (7) atrial fibrillation." *Harris v. H & W Contracting Co.*, 102 F.3d 516, 522 (11th Cir.1996) (quoting *The Merck Manual of Diagnosis and Therapy* [Robert Berkow et al. eds., 15th ed.1997] ). If left untreated or if improperly treated, Graves' disease can cause, in the extreme, "cardiovascular collapse and shock." *Id.* Bonitch was subsequently diagnosed with ocular myasthenia, a condition which caused him to experience double vision and a lack of control of his eye muscles. As a result, his left eye had a tendency to squint or close, and his right eye would look up and out. In fact, the plaintiff contends that his condition was visible and known to all of the other employees including his supervisors.

On April 8, 1997, Bonitch was discharged without warning. He met with Rick Collard, HBH's operations manager, who informed Bonitch that he was being terminated because the corporation was unhappy with the way that he was managing the store. Collard made reference to several incidents that had been reported on the plaintiff's managerial evaluations, such as an indifferent attitude toward store security and improper placement of the "side dish sampling stations."

Shortly after his termination, Bonitch commenced this action by filing a complaint on July 14, 1997. The complaint's first cause of action asserts a claim under the ADA, while the second cause of action advances a claim under the New York Executive Law. Both of

the plaintiff's causes of action assert that the defendant discriminated against him on the basis of a disability, namely Graves' disease, when he was terminated from his employment. On its part, the defendant argues that the plaintiff is not disabled within the meaning of either the ADA or the New York Executive Law, and even if he is, he cannot demonstrate that his claimed disability was a factor that led to his termination.

## II. DISCUSSION

### A. *Summary Judgment*

Summary judgment is appropriate only where there are no genuine disputes concerning any material facts, and where the moving party is entitled to judgment as a matter of law. *See In re Blackwood Assocs., L.P.,* 153 F.3d 61, 67 (2d Cir.1998) (citing Fed.R.Civ.P. 56[c]; *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 [1986]; *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 [1986] ). In deciding a summary judgment motion, the district court must resolve all ambiguities and draw all reasonable inferences in the light most favorable to the opposing party. *See Quinn v. Green Tree Credit Corp.,* 159 F.3d 759, 764 (2d Cir.1998); *Castle Rock Entertainment, Inc. v. Carol Pub. Group, Inc.,* 150 F.3d 132, 137 (2d Cir. 1998) (citing *Garza v. Marine Transp. Lines, Inc.,* 861 F.2d 23, 26 [2d Cir.1988] ). If there is evidence in the record as to any material fact from which an inference can be drawn in favor of the non-movant, summary judgment is unavailable. *See Holt v. KMI–Continental, Inc.,* 95 F.3d 123, 128 (2d Cir.1996), *cert. denied,* —— U.S. ——, 117 S.Ct. 1819, 137 L.Ed.2d 1027 (1997); *Rattner v. Netburn,* 930 F.2d 204, 209 (2d Cir.1991). The trial court's task is "carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution." *B.F. Goodrich v. Betkoski,* 99 F.3d 505, 522 (2d Cir.1996) (quoting *Gallo v. Prudential Residential Servs., Ltd., Partnership,* 22 F.3d 1219, 1224 [2d Cir.1994] ), *cert. denied sub nom., Zollo Drum Co., Inc. v.* *B.F. Goodrich Co.,* —— U.S. ——, 118 S.Ct. 2318, 141 L.Ed.2d 694 (1998).

It is within this framework that the Court addresses the grounds for HBH's motion for summary judgment.

### B. *The Americans With Disabilities Act*

The ADA prohibits an employer from discriminating against an employee "because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a) (1994).

■ A plaintiff alleging employment discrimination under the ADA bears the initial burden of establishing a prima facie case of discriminatory discharge. In order to establish a prima facie case, the plaintiff must show that: (1) his employer is subject to the ADA; (2) he suffers from a disability within the meaning of the ADA; (3) he could perform the essential functions of his job with or without reasonable accommodation; and (4) his disability was a factor that led to his termination. *Ryan v. Grae & Rybicki, P.C.,* 135 F.3d 867, 869 (2d Cir.1998) (citing *Bates v. Long Island R.R. Co.,* 997 F.2d 1028, 1035 [2d Cir.1993]; *Heilweil v. Mount Sinai Hosp.,* 32 F.3d 718, 722 [2d Cir.1994], *cert. denied,* 513 U.S. 1147, 115 S.Ct. 1095, 130 L.Ed.2d 1063 [1995] ).

### 1. *Bonitch's "Disability" Claim*

The ADA defines "disability" as: "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(2) (1994); *see also Bragdon v. Abbott,* 524 U.S. 624, 118 S.Ct. 2196, 141 L.Ed.2d 540 (1998). The Justice Department promulgated regulations that define "major life activities" as life "functions such as ... walking, seeing, hearing, speaking, breathing, learning and working." 28 C.F.R. § 35.104 (at Disability [2] ) (1998); *see also Bartlett v. New York State Bd. of Law Examiners,* 156 F.3d 321, 327–28 (2d Cir.1998).

The Supreme Court has observed that "[t]he ADA's definition of disability is drawn almost verbatim from the definition of 'handicapped individual' included in the Rehabilitation Act of 1973, 29 U.S.C. § 706(8)(B) (1988 ed.) ... [and that courts should] construe the ADA to grant at least as much protection as provided by the regulations implementing the Rehabilitation Act." *Bragdon v. Abbott*, 118 S.Ct. at 2202.

While the ADA does not define "substantial limitation," the regulations promulgated by the EEOC under the ADA explain the term. The regulations, though not binding, provide guidance in interpreting the ADA. *See Francis v. City of Meriden*, 129 F.3d 281, 283 n. 1 (2d Cir.1997) (great deference is owed EEOC regulations interpreting the ADA). Under these regulations, an individual is "substantially limited" when he is:

(i) Unable to perform a major life activity that the average person in the general population can perform; or

(ii) Significantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity.

29 C.F.R. § 1630.2(j)(1) (1998).

The EEOC further found that to decide whether a particular disability "substantially limits one or more of the major life activities," the severity of the impairment, the duration of the impairment, and the permanent or long term impact resulting from the impairment must be examined. Therefore, the plaintiff must demonstrate that his condition: (1) constitutes a physical impairment; (2) that his physical impairment affects a major life activity; and (3) that the major life activity is substantially limited by the physical impairment. In order to determine whether the plaintiff's condition constitutes a physical impairment, the Court is guided by the Department of Health and Human Services, who define "physical or mental impairment" as:

"(A) any physiological disorder or condition, cosmetic disfigurement, or anatomical loss affecting one or more of the following body systems: neurological; musculoskeletal; special sense organs ... cardiovascular; reproductive, digestive, genito-urinary; hemic and lymphatic; skin; and endocrine...." *Bragdon v. Abbott*, 524 U.S. 624, 118 S.Ct. 2196, 2198–99, 141 L.Ed.2d 540 (1998) (quoting 45 C.F.R. § 84.3(j)(2)(i) (1997)).

■ *Physical Impairment*

■ Analyzing step one, the Court notes that the plaintiff's symptoms associated with his condition include the necessity to frequent the bathroom, fatigue, sweating, shortness of breath, and a lack of muscle control in and around his eyes. In addition, Graves' disease affects the thyroid gland, which is a "two-lobed endocrine gland." *Harris*, 102 F.3d at 520; *Epstein v. Kalvin–Miller Int'l, Inc.*, 21 F.Supp.2d 400, 404 (S.D.N.Y.1998) (finding that plaintiff's heart disease and type 2 diabetes rose to the level of a disability within the definition of the ADA). Therefore, the Court concludes that Graves' disease constitutes a physical impairment as it affects the endocrine system, and thus meets the requirements set forth by the Department of Health and Human Services.

(ii) *Major Life Activity*

■ The second step of the Court's analysis in determining whether Graves' disease is a disability within the meaning of the ADA requires a determination as to whether the plaintiff's impairment affects a major life activity. Plaintiff states in his complaint that he has difficulty seeing when sitting at a computer for a period of time. In addition, the plaintiff claims to have experienced shortness of breath and fatigue. Both breathing and seeing are major life activities, *see* 45 C.F.R. § 84.3(j)(2)(ii) (1998), and therefore, the Court finds that the plaintiff has fulfilled the second prong of the test.

(iii) *Substantial Limitation*

■ The third prong of the test to determine whether the plaintiff has a disability within the meaning of the ADA is whether the major life activity in step two is substantially limited by the plaintiff's impairment from step one. *See Bragdon*, 524 U.S. 624,

118 S.Ct. 2196, 141 L.Ed.2d 540. When making this determination, the Court cannot consider mitigating circumstances such as medication. *See Harris,* 102 F.3d at 520; *Schaefer v. State Ins. Fund,* No.95 Civ. 0612, 1998 WL 126061 (S.D.N.Y. Mar. 19, 1998) (stating that the effect of medication cannot be considered when determining if a major life activity is substantially limited); *Epstein,* 21 F.Supp.2d at 404 (stating that the limitation on a major life activity must be determined with regard to plaintiff's condition without medicine). The Court notes that while the Second Circuit has not specifically addressed this issue, the Eleventh Circuit concluded in *Harris v. H & W Contracting Co.,* 102 F.3d 516 (11th Cir.1996), that whether a person with Graves' disease has an impairment which substantially limits a major life activity is a genuine issue of material fact that a jury, not the Court, must decide. This Court agrees with the ruling by the Eleventh Circuit. The Court cannot conclude that the plaintiff's affliction with Graves' disease could not substantially limit a major life activity in the absence of medication, as a matter of law. Thus, a genuine issue of material fact exists as to whether the plaintiff's condition substantially limits a major life activity in order to qualify him as disabled within the meaning of the ADA.

### 2. *Otherwise Qualified*

Finally, as previously noted, an essential element of an ADA claim is an allegation that the plaintiff is "otherwise qualified" for his particular job. *Borkowski v. Valley Cent. Sch. Dist.,* 63 F.3d 131, 137 (2d Cir. 1995). To be "otherwise qualified," the plaintiff must be "able to perform the essential functions of the job, either with or without a reasonable accommodation." *Id.* at 135 (citing *School Bd. of Nassau County v. Arline,* 480 U.S. 273, 279, 107 S.Ct. 1123, 94 L.Ed.2d 307 [1987] and *Gilbert v. Frank,* 949 F.2d 637, 641–42 [2d Cir.1991] ). The plaintiff was clearly otherwise qualified as he had the ability to appear at work and perform his duties without any special accommodation. Despite the plaintiff's condition, he was generally early to work, rarely took vacations, worked long days, and continued to fulfill his existing responsibilities.

### 3. *Was the Plaintiff's Disability a Factor Leading to his Termination?*

"The burden of establishing a prima facie case [of discrimination] is not onerous, and has been frequently described as minimal." *Epstein,* 21 F.Supp.2d at 404 (citing *Scaria v. Rubin,* 117 F.3d 652, 654 [2d Cir. 1997] ). When attempting to determine whether a genuine issue of material fact exists for trial regarding whether a plaintiff was discharged because of his disability, it is important to recognize "that employment discrimination is often accomplished by discreet manipulations and hidden under a veil of self-declared innocence." *Rosen v. Thornburgh,* 928 F.2d 528, 533 (2d Cir.1991). The determination of whether the plaintiff was discharged because of his disability is best left to the trier of fact, as there is generally very little direct evidence of "discriminatory intent" in such a case. *Hollander v. American Cyanamid Co.,* 895 F.2d 80, 85 (2d Cir.1990) (citing *Clements v. County of Nassau,* 835 F.2d 1000, 1005 [2d Cir.1987] ). The plaintiff must be afforded the opportunity to build his case from circumstantial evidence. *See id.*

Plaintiff contends that the real reason for his termination was because he was disabled. In support of his claim, the plaintiff asserts that Mark Nieto, the plaintiff's supervisor, recognized that employees articulated animus toward the plaintiff with regard to his condition. In addition, the plaintiff argues that while he was terminated, a less qualified employee retained a managerial position. On the other hand, the defendant contends that the plaintiff was terminated because he failed to act in a professional manner and because the company was in the process of making numerous employee terminations. The defendant supports its contention of company changes through its assertion that four other individuals, none of whom were disabled, were discharged on the same day. It is clear that the defendant's "intent and state of mind" are at issue, and in such instances "summary judgment is ordinarily inappropriate." *Id.* (citing *Meiri v. Dacon,* 759 F.2d 989, 998 [2d Cir.1985] ). Viewed in the light most favorable to the plaintiff, the Court

concludes that there exists genuine issues of material fact to be decided at trial. Therefore, as the Court denies the defendant's motion for summary judgment seeking dismissal of the plaintiff's claim under the ADA.

### C. *The New York State Human Rights Law*

The New York State Human Rights Law ("NYHRL"), Executive Law § 290 *et seq.*, substantially resembles the ADA. The NYHRL provides that "[i]t shall be an unlawful discriminatory practice ... [f]or an employer ... because of the ... disability ... of any individual, to refuse to hire or employ or to bar or to discharge from employment such individual." New York Executive Law § 296. "There is no difference between the quantum or elements of proof required by the ADA and the NYHRL." *Mohamed v. Marriott Int'l*, 905 F.Supp. 141, 156 (S.D.N.Y.1995) (citing *Sogg v. American Airlines, Inc.*, 193 A.D.2d 153, 603 N.Y.S.2d 21 [1st Dep't 1993]; *Piekielniak v. New York State Dep't of Health*, 116 A.D.2d 839, 497 N.Y.S.2d 510 [N.Y.A.D.3d Dep't 1986]; *Swett v. Schenectady Community Action Program*, 107 A.D.2d 990, 484 N.Y.S.2d 711 [N.Y.A.D.3d Dep't 1985]; *Comfort v. New York State Human Rights Appeal Bd.*, 101 A.D.2d 663, 475 N.Y.S.2d 588 [N.Y.A.D.3d Dep't 1984] ). The Court having determined that there exists genuine issues of material facts with respect to the plaintiff's ADA claim, likewise holds that the defendant's motion for summary judgment seeking dismissal of the NYHRL claim is denied.

### III. CONCLUSION

Having reviewed the parties' submissions, it is hereby

**ORDERED,** that the defendant's motion for summary judgment seeking dismissal of the plaintiff's complaint is **DENIED;** and it is further

**ORDERED,** that Counsel are to appear for jury selection on March 15, 1999 at 9 AM.

**SO ORDERED.**