Grace HAZELDINE, Plaintiff,

v.

BEVERAGE MEDIA, LTD., Defendant.

94 Civ. 3466 (CSH).

United States District Court, S.D. New York.

Jan. 28, 1997.

John A. Beranbaum, New York City, for Plaintiff.

Jaffe and Asher, New York City (Ira N. Glauber, Wiliam A. Rome, of counsel), for Defendant.

### MEMORANDUM OPINION AND ORDER

HAIGHT, Senior District Judge:

Plaintiff Grace Hazeldine alleges that she was terminated by her employer, defendant Beverage Media, Ltd. because she is obese and because she is a woman, in violation of the Americans with Disabilities Act of 1990 ("the ADA"), 42 U.S.C. § 12101 et seq., Title

VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e et seq., the New York State Human Rights Law, New York Exec. Law § 290 et seq., and the Administrative Code of the City of New York § 8–101 et seq. After full discovery, defendant moves for summary judgment pursuant to Federal Rule of Civil Procedure 56. In addition, plaintiff moves to amend her complaint by adding the president of Beverage Media, William G. Slone, as an individual defendant on her state claims. For the reasons stated below, defendant's motion is granted as to plaintiff's claim under the ADA and denied as to the remainder of her claims, and plaintiff's motion to amend her complaint is granted.

## I. BACKGROUND

Beverage Media is a small, family owned business that publishes several magazines for the wine and spirit trade. One such magazine, "Beverage Media Journal", is published in two separate editions: the Metro edition for the New York City area, and the Upstate edition for the surrounding counties. William Slone has been the president of Beverage Media for 15 years.

**Hazeldine's Obesity**

Grace Hazeldine began working at Beverage Media in 1980 as a part-time proofreader. At the time she was hired, she weighed 150 pounds. Hazeldine gradually gained weight over the course of her employment, so that since the mid–1980's, she has weighed at least 290 pounds. According to a letter from her physician, Dr. Licciardone, Hazeldine is "morbidly obese."

It is undisputed that Hazeldine's obesity never interfered with her ability to do her work at Beverage Media. In fact, Hazeldine testified at her deposition that she worked harder and longer hours than most people. She also stated in her deposition that her obesity did not prevent, interfere or even affect her ability to use public transportation while she was an employee at Beverage Media. Hazeldine commuted to work from New Jersey by bus and subway everyday, walking the remaining distance from the subway to her office.

In addition, Hazeldine testified that her weight condition at the time of her termination did not prevent her from carrying out everyday physical activities such as walking or going upstairs. In fact, when asked, Hazeldine could not think of any physical activities that she could not perform because of her obesity. However, Hazeldine also testified that her ability to engage in some of these physical activities was limited: she could not walk long distances or lift anything too heavy, and she could not engage in heavy physical exercise such as running or jogging.

In a later affidavit, Hazeldine states that she had to stop and rest even when doing less strenuous activities such as cleaning the house, walking five city blocks or climbing subway stairs. According to Lorayne Coneys, Hazeldine's roommate in 1992, Hazeldine could not shovel snow, move furniture around, or climb a ladder. Raking leaves would result in labored breathing and heart palpitations, and Hazeldine would have to take frequent breaks. Coneys also states that Hazeldine could not walk her dogs more than a block, could not bend or kneel, and often twisted her ankles such that they would bruise and become swollen. As a result of these limitations, Coneys states that Hazeldine would engage in any required physical activity on Saturdays, to allow herself a day to rest before returning to work.

In her deposition testimony, Hazeldine testified that she went to one weight loss program at Holy Name Hospital in 1987, but otherwise never consulted a doctor about her obesity. In fact, Hazeldine considered herself to be in good health and testified that "I am very healthy besides being overweight, I have good blood pressure, and I didn't really consider it a problem." However, records from Holy Name Hospital show that Hazeldine was diagnosed with hypertension and coronary insufficiency in 1987. In addition, Hazeldine began seeing a therapist in 1990, Sara Penchuk, who concluded that Hazeldine had an eating disorder and exhibited depressive qualities. Hazeldine has been taking Prozac intermittently since that time.

**Employment Conditions at Beverage Media**

In 1988, Hazeldine was promoted to assistant production manager for Beverage Media

and in 1991 she was promoted again to production manager. Hazeldine was obese at the time of both these promotions. However, Hazeldine alleges in her affidavit that the circumstances of these promotions illustrate the discriminatory treatment she received while an employee at Beverage Media.

When the assistant production manager job became available in 1988, the company's production manager, Phil Alberts, told Hazeldine that Slone wanted to hire a man for the position and that she was not being considered for the job. When she threatened to quit, she was finally given the job. When Alberts left the company in 1991, Hazeldine immediately assumed his duties as production manager. However, it was not until she sent a memo to Slone three months later requesting a raise and the title of production manager that she was formally promoted to the position and given a salary of $61,000 a year.

Hazeldine also testified that the terms and conditions of her employment as production manager were significantly less favorable than those that Alberts had enjoyed. She was paid several thousand dollars less than Alberts and was not given the officer's title that he had held. The masthead was not even changed to reflect her promotion until three months later. In addition, her request for a company car was denied, although Alberts' request had been granted. An assistant production manager was not hired to help her for six months; when the position was finally filled, Hazeldine had to share the assistant with another manager. Hazeldine also says she was denied the direct access to Slone that Alberts had enjoyed. Instead, Slone directed her to communicate with him through his cousin, Gerry Slone, who also worked at Beverage Media.

According to Hazeldine and Anita Rosepka, the former senior editor at Beverage Media, Slone regularly treated men and women differently. Men could be nasty and abrasive, but if a woman disagreed with Slone or raised her voice, she was accused of being hostile, argumentative or hysterical. While Hazeldine was disciplined and called hysterical when she had one confrontation with a customer, Alberts was never disciplined for regularly yelling at everyone, including customers. Rosepka recalls Slone telling her to "lighten up," smile more and be friendly.

In response, Slone points out that five out of six departments at Beverage Media were run by women in May 1992. However, Hazeldine points out that most of the women who were managers in May 1992 were fired or quit around the same time that Hazeldine was discharged. In addition, according to both Rosepka and Hazeldine, Slone commented during a meeting with them and another female manager that he felt "surrounded." Hazeldine also states that Slone said women were hard to get along with. Rosepka reports that Slone told her to hire a man when she wanted to replace her assistant because "we have enough women running things around here." Slone denies making this statement.

**Hazeldine's Termination**

As production manager, Hazeldine was responsible for the timely production and distribution of the company's publications, including the Upstate edition of "Beverage Media." The Upstate edition was then published on a monthly basis and was typically mailed to customers in the first week of the month. However, in 1992, the October issue of the Upstate edition was not mailed until November 4, 1992, about a month late.

Brian Donna, an account manager for Beverage Media's printer, testified in his deposition that Hazeldine sent him the mechanicals for the October 1992 issue several weeks late. In addition, according to Donna, Hazeldine threatened to find another printer for the magazine if Donna told Slone about the delay. Despite Hazeldine's threat, Donna reported the conversation to Gerry Slone after he called looking for a sample of the October issue. At some point in October 1992, Slone himself asked Hazeldine the status of the October 1992 issue. According to him, Hazeldine lied in response to his inquiry and never told him that the October issue had not yet been produced.

Hazeldine says she told Slone in mid-October that the Upstate edition had not yet been produced because she was overworked and

needed more help. According to Hazeldine, Slone was not concerned about the Upstate edition and refused to provide additional help. When Slone inquired about the status of the issue later in the month, Hazeldine responded that it had been mailed. When she discovered that the issue had not in fact been mailed due to a problem at the printer, she "panicked" and told Donna not to tell Gerry Slone that the issue had not been distributed. However, Hazeldine alleges that she told Gerry Slone the truth later that day and he told her not to worry about it. Hazeldine denies threatening Donna with the loss of Beverage Media's business.

On November 24, 1992, Slone informed Hazeldine that she was being terminated. At that time, Slone did not mention the lateness of the October 1992 Upstate edition as a reason for her termination. In fact, Hazeldine testified that Slone assured her that she was an excellent employee, but mentioned financial considerations. When she offered to take a pay cut, Slone refused and told her that the company was moving to smaller offices, that she was a "big girl" and there was no room for her there. Slone denies making this statement. At the time of her discharge, Hazeldine weighed between 295 and 310 pounds.

By letter dated November 25, 1992, Slone informed Hazeldine that she was being terminated for cause. Slone now testifies that Hazeldine was terminated for two reasons: her failure to produce the October 1992 Upstate edition on a timely basis, coupled with her subsequent efforts to cover up the error; and the company's need to improve billing and cut production costs in the face of an economic downturn.

According to Slone, the company was able to reduce production costs significantly after Hazeldine was terminated. Gerry Slone assumed her duties on a part time basis at a salary of only $40,000, compared to Hazeldine's salary of $61,000. In addition, whereas the company had previously paid Hazeldine's parents over five thousand dollars for proofreading services, that function was absorbed within the company. Billing procedures were also made more efficient and travel expenses were reduced since Gerry Slone commuted a shorter distance to the printer.

Hazeldine points out that she had been successful in reducing production costs during her tenure as production manager by reducing excess printing and computerizing the production system, and that Slone was aware of these efforts. Both Hazeldine and Rosepka also state that the Upstate edition was not a major priority for the company and its late production would not be a cause of great concern. Overall, Rosepka and Hazeldine assert that Hazeldine was an excellent production manager.

Hazeldine also testified that Slone's comments on November 24, 1992 were not the first time he had inappropriately brought attention to her weight. According to Hazeldine, Slone often told her that she could work harder if she lost weight. In addition, Hazeldine says that Slone always made a point of telling her that the popcorn he made as a snack was "lite." On one occasion, Gerry Slone told Hazeldine that Slone blamed her gallbladder operation and subsequent absence from work on the fact that she was overweight. Hazeldine also testified that Slone restricted her dinner expenses to ten dollars, even though no other employee was limited to that extent.

Shortly after she was fired, Hazeldine filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC). After receiving notice of her right to sue, Hazeldine filed the instant complaint, alleging that she was terminated because she was a woman and because she was obese. Beverage Media denies Hazeldine's claims, asserting that she was fired for cause and as part of an effort to reduce costs.

## II. DISCUSSION

### DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Under Fed.R.Civ.P. 56(c), the moving party is entitled to summary judgment if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as

a matter of law." In considering such a motion, "a district judge must view the evidence in the light most favorable to the nonmoving party and must draw all inferences in favor of that party." *Wernick v. Federal Reserve Bank of New York,* 91 F.3d 379, 382 (2d Cir.1996).

The party seeking summary judgment initially bears the burden of showing that there are no genuine issues of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). Once such a showing is made, the party opposing a properly supported motion must "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). However, "the mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient" to defeat a properly supported motion for summary judgment. *Anderson,* 477 U.S. at 252, 106 S.Ct. at 2512. Instead, the nonmovant must offer "concrete evidence from which a reasonable juror could return a verdict in [her] favor." *Id.* at 256, 106 S.Ct. at 2514. Summary judgment should only be granted if no rational jury could find in favor of the non-moving party. *Heilweil v. Mount Sinai Hospital,* 32 F.3d 718, 721 (2d Cir. 1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 1095, 130 L.Ed.2d 1063 (1995).

While the party resisting summary judgment must show a dispute of fact, it must also be a material fact in light of the substantive law. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Accordingly, summary judgment is warranted where, "after adequate time for discovery ... [the nonmoving party] fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.,* 477 U.S. at 323, 106 S.Ct. at 2552.

In the employment discrimination context, a trial court must be "cautious" about granting summary judgment; direct evidence supporting a plaintiff's claim of intentional discrimination is rarely found among an employer's papers. *Gallo v. Prudential Residential Services, Ltd. Partnership,* 22 F.3d 1219, 1224 (2d Cir.1994); *Chambers v. TRM Copy Centers Corp.,* 43 F.3d 29, 37 (2d Cir. 1994). However, summary judgment is not necessarily precluded in an employment discrimination case, even when the employer's intent or state of mind is at issue. *Chambers,* 43 F.3d at 40; *Dister v. Continental Group, Inc.,* 859 F.2d 1108, 1114 (2d Cir. 1988); *Meiri v. Dacon,* 759 F.2d 989, 998 (2d Cir.1985), *cert. denied,* 474 U.S. 829, 106 S.Ct. 91, 88 L.Ed.2d 74 (1985).

### 1. *Americans with Disabilities Act*

In Count One of her complaint, Hazeldine alleges that she was terminated because of her disability in violation of the ADA. Beverage Media contests this conclusion on two grounds. First, defendant argues that Hazeldine's obesity does not render her disabled under the ADA as a matter of law. Second, defendant argues that there is no evidence that plaintiff was terminated because of her obesity. Plaintiff counters both arguments by alleging facts which she claims illustrate not only that she is disabled, but also that she was terminated because of her disability.

The Americans with Disabilities Act prohibits covered entities from discriminating against a "qualified individual with a disability because of the disability of such individual...." 42 U.S.C. § 12112. A plaintiff who alleges disability discrimination establishes a prima facie case by showing: (1) that she is disabled; (2) that she is otherwise qualified to perform her job; and, (3) that she was discharged because of her disability. *Wernick v. Federal Reserve Bank of New York,* 91 F.3d 379, 383 (2d Cir.1996); *Heilweil v. Mount Sinai Hospital,* 32 F.3d 718, 722 (2d Cir.1994). Thus, Hazeldine must meet the threshold burden of establishing that her obesity constitutes a disability under the ADA.

Under the ADA, "disability" is defined as "a physical or mental impairment that substantially limits one or more of the major life activities of such individual." 42 U.S.C.

§ 12102(2). The first prong of this definition, physical or mental impairment, is further defined as:

> any physiological disorder, or condition, cosmetic disfigurement, or anatomical loss affecting one or more of the following body system: ... musculoskeletal, ... respiratory ... cardiovascular...."

29 C.F.R. § 1630.2(h). Through the evidence presented in opposition to defendant's motion, Hazeldine has shown that her obesity constitutes a physiological condition which affects at least her musculoskeletal, respiratory, and cardiovascular systems.

Both Coneys and Hazeldine testified that Hazeldine often twists her ankles causing bruising and swelling. In addition, there is evidence that Hazeldine suffers from heart palpitations and shortness of breath after physical activity. In fact, she was diagnosed with both hypertension and coronary insufficiency while attending the weight loss clinic at Holy Name Hospital. As such, Hazeldine has submitted evidence sufficient for a jury to find that her obesity is a physical impairment. *Cf. Cook v. Rhode Island Dep't. of Mental Health, Retardation, and Hospitals,* 10 F.3d 17, 23 (1st Cir.1993) (finding that jury could reasonably have found that morbidly obese plaintiff had a physical impairment).

However, "a physical impairment, standing alone, is not necessarily a disability as contemplated by the ADA." *Dutcher v. Ingalls Shipbuilding,* 53 F.3d 723, 726 (5th Cir.1995). Hazeldine must also show that her obesity substantially limits one or more major life activity. Defendant argues that Hazeldine's own deposition testimony illustrates that she is not substantially limited by her weight as a matter of law. Hazeldine disputes this conclusion by pointing to the difficulty she encounters when walking, lifting, bending, kneeling and engaging in other physical activity. Viewing the evidence in the light most favorable to Hazeldine, it is clear that she experiences some limits as a result of her weight. However, the critical issue is whether Hazeldine has offered evidence on which a reasonable jury could find that her obesity substantially limits a major life activity.

To be substantially limited under the ADA, an individual must be "unable to perform a major life activity that the average person in the general population can perform" or be "significantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity" compared to the average person. 29 C.F.R. § 1630.2(j)(1).[1] In determining whether an individual is substantially limited, the nature and severity of the impairment, the duration or expected duration of the impairment, and the actual or expected permanent or long term impact of or resulting from the impairment should be considered. 29 C.F.R. § 1630.2(j)(2).

However, an impairment may affect an individual's life without becoming disabling. *Nedder v. Rivier College,* 908 F.Supp. 66, 75 (D.N.H.1995) (citations and internal quotations omitted). In fact, the interpretative guidelines for the ADA indicate that obesity should not be considered a disabling impairment, "except in rare circumstances." 29 C.F.R. Pt. 1630, App., § 1630.2(j).

■ After reviewing the evidence submitted in opposition to this summary judgment motion, I conclude that plaintiff has not presented facts sufficient for a reasonable jury to find that her obesity so significantly limits a major life activity that the rare circumstances contemplated in the above quoted language exist. There is no evidence that plaintiff's obesity limits her ability to see, hear, speak, breathe, learn, work, sit, stand, reach, care for herself, perform manual tasks, drive a car, or commute to work in any way. To be sure, plaintiff has presented evidence that she cannot shovel snow or engage in other strenuous physical exercise. She also alleges that she is limited in her ability to lift and carry objects weighing more than ten pounds. She cannot kneel or bend, and must kick a dropped object close to a chair to enable her to pick it up while

---

**1.** "Major life activities" include such functions as "caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(i).

This list is not exhaustive; "other major life activities include, but are not limited to sitting, standing, lifting, reaching." 29 C.F.R.Pt. 1630, App., § 1630.2(j).

sitting. After climbing stairs, raking leaves, doing housework or walking more than five city blocks she is out of breath and must stop and rest. While it is reasonable to conclude from this evidence that plaintiff's obesity *affects* her ability to engage in everyday activities, these allegations are not sufficient to support the conclusion that her weight *substantially limits* a major life activity.

Two other district courts which have considered this issue on summary judgment have reached the same conclusion under similar circumstances. In *Nedder v. Rivier College*, 944 F.Supp. 111, 115–118 (D.N.H.1996), Nedder, who was 5' 6" tall and weighed 380 pounds, claimed that she was fired from her position as an assistant professor because she was obese. In support of her claim that obesity was a disability under the ADA, Nedder argued that her morbid obesity substantially limited her ability to walk. *Id.* Like Hazeldine, Nedder could not walk long distances and was unable to walk at the same pace as an average person. *Id.* In addition, Nedder's physician testified at a deposition that Nedder could only engage in physical activity such as housework, shopping, walking, bending and getting in and out of a car with considerable exertion; he classified her as fifty percent disabled. *Id.* After reviewing this evidence, the court granted summary judgment to the defendants, concluding that Nedder was not substantially limited in the character or degree required to invoke the protection of the ADA. *Id.*

Similarly, in *Stone v. Entergy Services, Inc.*, 1995 WL 368473, *2 (E.D.La.1995), Stone, who had a physical impairment resulting from polio, alleged that he was terminated in violation of the ADA. Similar to Hazeldine, Stone alleged that his impairment substantially limited his ability to engage in various physical activities: he had limited endurance; he had to stop and rest after climbing stairs; he was unable to run; he had limited motion in his body and difficulty bending; and walked significantly more slowly than the average person. *Id.* at *3. After reviewing this evidence, the court granted the defendant summary judgment, concluding that plaintiff was not substantially limited or significantly restricted. *Id.* at *4. *See also Kelly v. Drexel University*, 94 F.3d 102 (3d Cir.1996) (affirming summary judgment for defendants and holding that plaintiff was not disabled despite evidence he could not jog or walk long distances and had difficulty climbing stairs).

There is no principled difference between the limitations alleged by Hazeldine and those alleged by the plaintiffs in *Nedder* and *Stone*. To begin with, Hazeldine's own deposition testimony establishes that her weight condition did not *prevent* her from carrying out normal physical activities. It is also clear that plaintiff's ability to engage in physical activity was sufficient at the time of her discharge to allow her to carry on her daily life: commuting to work everyday, shopping for herself, caring for herself, and completing household tasks, albeit with some difficulty. At most, plaintiff must pace herself when engaging in such physical activity by stopping and resting after five city blocks or twenty minutes of exertion; but this degree of limitation is far from the "substantial" or "significant" restriction contemplated by the ADA as constituting the rare circumstances in which obesity should be considered a disabling impairment.[2]

Plaintiff's inability to kneel, bend or lift heavy objects does not alter this conclusion. *Cf. Nedder*, 944 F.Supp. at 117 (plaintiff's inability to bend without considerable exertion does not render her substantially limited); *Williams v. Channel Master Satellite*

---

2. In support of her opposition to defendant's motion for summary judgment, plaintiff submitted a letter from her physician, Dr. Salvatore Licciardone, dated August 21, 1995. In that letter, Dr. Licciardone diagnoses Hazeldine as morbidly obese. He continues to describe the physical limitations placed on Hazeldine as a result of this condition: "shortness of breath—especially going up and down steps; she can't walk long distances; her joints especially feet and ankles become sore when on them all day."

These limitations cannot be considered substantial or significant restrictions on a major life activity. In addition, this letter seems to refer to Hazeldine's condition in 1995, rather than in 1992 when she was terminated. However, Hazeldine weighed 342 pounds in 1995 when the letter was written, but only 295 to 310 pounds when she was fired in 1992. Plaintiff has submitted no other expert medical testimony regarding her weight condition.

*Systems, Inc.,* 101 F.3d 346, 349 (4th Cir. 1996) (affirming summary judgment for defendant and holding as a matter of law that twenty-five pound lifting restriction is not a significant restriction on any major life activity); *Howard v. Navistar Int'l Transportation Corp.,* 904 F.Supp. 922 (E.D.Wis.1995) (granting summary judgment to defendant because plaintiff's inability to lift over fifteen to twenty pounds is not a substantial limitation on a major life activity). Accordingly, plaintiff has failed to show that her obesity substantially limits one or more major life activities.

In the alternative, plaintiff argues that her obesity is a "cosmetic disfigurement" such that she need not prove that her condition substantially limits a major life activity in order for her to be considered disabled under the ADA. Plaintiff bases this argument on *School Board of Nassau County v. Arline,* 480 U.S. 273, 283, 107 S.Ct. 1123, 1128–29, 94 L.Ed.2d 307 (1987). However, plaintiff's attempt to equate obesity with a cosmetic disfigurement is nothing more than a resurrection of her previously withdrawn claim that she was terminated because defendant "regarded" her as disabled.[3]

Under the ADA, the term "disability" means not only "a physical or mental impairment that substantially limits one or more of the major life activities" of an individual, but also "being regarded as having such an impairment." 42 U.S.C. § 12102(2). Thus, Hazeldine is correct that an individual can be disabled under the ADA even if he or she has an impairment that does not substantially limit any major life activity, such as a cosmetic disfigurement. *See* 29 C.F.R. § 1630.2(l). As the Supreme Court explained in *Arline,* "disability" in this situation results from the negative myths or stereotypes of others; an employer may regard a perfectly able individual with a visible physical impairment as substantially limited in the ability to work. 480 U.S. at 283, 107 S.Ct. at 1128–29; *see also* 42 U.S.C. § 12101(2)(C); 29 C.F.R. § 1630.2(l). For an individual to be substantially limited in the ability to work,

an employer must consider "the employee's impairment to foreclose generally the type of employment involved." *Forrisi v. Bowen,* 794 F.2d 931, 935 (4th Cir.1986).

■ However, Hazeldine has not presented any evidence that Beverage Media regarded her as disabled, or substantially limited in her ability to work, as a result of her obesity. *Cf. Cook,* 10 F.3d at 25–26 (holding that jury could have rationally concluded that defendant regarded plaintiff as disabled where evidence showed that defendant believed plaintiff's obesity foreclosed a broad range of employment options); *Nedder,* 944 F.Supp at 119–20 (holding that a trier of fact could find that employer regarded obese plaintiff as substantially limited in ability to teach based on evidence that employer believed students perceive obese teachers as less disciplined and less intelligent); *Hodgdon v. Mt. Mansfield Co.,* 160 Vt. 150, 624 A.2d 1122 (1992) (employer regarded plaintiff with cosmetic disfigurement as substantially limited since employer viewed plaintiff as unfit to work in any position involving customer contact). Hazeldine's testimony that Slone told her she could work harder if she lost weight is not sufficient evidence for a reasonable jury to conclude that Beverage Media regarded her as substantially limited in her ability to work. In addition, Hazeldine has produced no evidence, other than conclusory allegations, that Beverage Media thought she was unfit to work in a position involving customer contact.

In sum, Hazeldine has not presented sufficient evidence for a reasonable jury to find that she is disabled under the ADA, either because her obesity substantially limits a major life activity or because Beverage Media regarded her as disabled. Because she has not established this threshold element of her prima facie case, I need not address the second issue presented by the parties, that is, whether her obesity was the reason for her discharge. *See Celotex Corp.,* 477 U.S. at 323, 106 S.Ct. at 2552 ("[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily

**3.** Counts Four, Five and Six of plaintiff's complaint allege discrimination on the basis of a perceived disability in violation of the ADA, state and city law respectively. However, plaintiff subsequently withdrew these claims. *See* Memorandum of Law in Opposition, at 29 n. 8.

renders all other facts immaterial."). Accordingly, Beverage Media' summary judgment motion is granted with respect to Count One of plaintiff's complaint.

### 2. *Disability Discrimination under State Law*

Plaintiff also asserts that her termination violated New York State Human Rights Law and the Administrative Code of the City of New York. Defendant again argues that both causes of action should be dismissed because plaintiff is not disabled within the meaning of these statutes and cannot prove that she was terminated because of her weight. In response, plaintiff points out that the definition of "disability" under state law is broader than federal law, such that even if the Court determined that she was not disabled within the meaning of the ADA, her state claims are not foreclosed. In addition, plaintiff argues that she has presented enough evidence to support a jury finding that defendant's articulated reasons for her termination were false and that the real reason was her obesity.

**Obesity as a Disability under State Law**

Under New York State law, an employer is prohibited from discharging an individual because of that individual's disability. N.Y.Exec.Law § 296 (McKinney's Supp. 1997); *see also* New York Admin.Code § 8–106. "Disability" is further defined as

> a physical mental or medical impairment resulting from anatomical, physiological, genetic or neurological conditions which prevents the exercise of a normal bodily function *or* is demonstrable by medically accepted clinical or laboratory diagnostic techniques.

N.Y.Exec.Law § 292(21) (McKinney's Supp. 1997) (emphasis added). Under the New York City Administrative Code, the term "disability" means any "physical, medical, mental, psychological impairment, or a history or record of such impairment." New York Admin.Code § 8–102(16).

Thus, an individual can be disabled under the Executive law if his or her impairment is demonstrable by medically accepted techniques; it is not required that the impairment substantially limit that individual's normal activities. Similarly, under the Administrative Code an individual's impairment need not substantially limit a major life activity, prevent a normal bodily function or even be demonstrable by medically accepted techniques. *Compare* New York Admin.Code § 8–102(16) with 42 U.S.C. § 12102(2) and N.Y.Exec.Law § 292(21). It is enough that the condition impairs any body system. These definitions are substantially broader than the definition of "disability" under the ADA.

In *State Division of Human Rights v. Xerox Corp.*, 65 N.Y.2d 213, 491 N.Y.S.2d 106, 109, 480 N.E.2d 695, 697–98 (1985), the New York Court of Appeals emphasized the broad reach of the Executive Law:

> [Xerox] urges that the determination [of the Human Rights Commissioner] is not supported by substantial evidence because there is no evidence that [plaintiff's] condition presently places any restrictions on her physical or mental abilities. [ ] These arguments might have some force under typical disability or handicap statutes narrowly defining the terms in the ordinary sense to include only physical or mental conditions which limit the ability to perform certain activities (see, e.g., 29 U.S.C. § 706[6] [now 7], defining a "handicapped individual" as a person who "has a physical or mental impairment which substantially limits one or more of such person's major life activities"). However in New York, the term "disability" is more broadly defined. [ ]
>
> Fairly read, the statute covers a range of conditions varying in degree from those involving the loss of a bodily function to those which are merely diagnosable medical anomalies which impair bodily integrity and thus may lead to more serious conditions in the future.

The plaintiff in *Xerox*, who was 5' 6" and weighed 249 pounds, was denied employment at Xerox because she was obese. The Court concluded that her weight condition itself, which was clinically diagnosed as "gross obesity", "constituted an impairment and therefore a disability within the contemplation of the statute." *Id.* at 109, 480 N.E.2d at 698.

The extent of the plaintiff's limitations as a result of her obesity was irrelevant. *Id.*[4]

■ Based on these broad definitions and the evidence presented, I conclude that a reasonable jury could find that Hazeldine is disabled within the meaning of the Executive Law and the New York City Administrative Code. Hazeldine's physician, Dr. Licciardone, diagnosed her as "morbidly obese." Although this letter was written in 1995 and refers to her weight at that point rather than at her termination, "morbid obesity" is defined as weighing 100 pounds above or over twice one's ideal body weight. *The Merck Manual of Diagnosis and Therapy,* 981 (Robert Berkow, ed., 16th ed. 1992). At the time of her termination from Beverage Media in 1992, Hazeldine weighed 295 to 310 pounds, whereas Dr. Licciardone states that her ideal body weight is 142 to 162 pounds. Thus, according to the established definition of morbid obesity, Hazeldine was morbidly obese in 1992. Since Dr. Licciardone has been Hazeldine's doctor since 1988, it is reasonable to conclude that his diagnosis applied to Hazeldine in 1992 as well as 1995. Pursuant to *Xerox,* Hazeldine's clinically diagnosed morbid obesity renders her disabled under the Executive Law.[5]

The New York Administrative Code only requires that Hazeldine's obesity impair a body system. Hazeldine presented evidence that her weight condition causes her to twist and bruise her ankles. In addition, records from the Holy Name Hospital show that Hazeldine was diagnosed with hypertension and coronary insufficiency in 1987. Coneys testified that Hazeldine often experiences heart palpitations and shortness of breath. This evidence, plus Dr. Licciardone's report, is sufficient to allow a reasonable jury to conclude that Hazeldine has physical or medical impairment which impairs either her musculoskeletal system or her cardiovascular system, and is thus disabled within the meaning of the Administrative Code.

**Pretext for Termination**

■ Defendant argues that even if plaintiff is considered disabled under state law, no rational jury could conclude on the evidence presented that Beverage Media's articulated reason for firing her was false and that the real reason was discrimination. Plaintiff, of course, disputes this assertion and alleges that she has presented enough evidence to support a jury finding that she was fired because of her obesity. I agree with plaintiff, and conclude that the evidence presented creates a genuine issue of fact.

The burdens of proof in employment discrimination cases under New York law are governed by the same standards as those that apply in federal civil rights cases, including the ADA. *Sogg v. American Airlines, Inc.,* 193 A.D.2d 153, 603 N.Y.S.2d 21, 23 (1993); *Song v. Ives Laboratories, Inc.,* 957 F.2d 1041, 1046 (2d Cir.1992); *Mohamed v. Marriott Int'l, Inc.,* 905 F.Supp. 141, 156–57 (S.D.N.Y.1995). As a result, the burden-shifting analysis developed by the Supreme Court in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) and *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981) applies in this case.

Hazeldine must first establish a prima facie case by showing that she was (1) a member of a protected class, (2) qualified for the position, and (3) discharged under circumstances giving rise to an inference of discrim-

---

**4.** Although the Court of Appeals in *Xerox* distinguished New York law from the Rehabilitation Act of 1973, the ADA is based on the Rehabilitation Act. As a result, the definition of disability under the ADA is identical to the definition of disability under the Rehabilitation Act. *Compare* 42 U.S.C. § 12102(2) with 29 U.S.C. § 706(8)(B). Thus, the Court of Appeals' conclusion that the definition of "disability" under New York law is broader than the definition of "disability" under the Rehabilitation Act applies with equal force to the ADA.

**5.** *Underwood v. Trans World Airlines, Inc.,* 710 F.Supp. 78 (S.D.N.Y.1989) does not alter this conclusion. In that case, the plaintiff was suspended by TWA for being overweight; she weighed 154 pounds and TWA wanted her to weigh 142 pounds. *Id.* at 81 & n. 3. The plaintiff did not claim to be obese, but merely overweight. *Id.* at 84. The Court held that the difference between obesity and overweight was significant and that *Xerox* did not extend to individuals who were merely overweight. Hazeldine is not merely overweight; she has been clinically diagnosed as morbidly obese.

ination. *Dister v. Continental Group, Inc.,* 859 F.2d 1108, 1114 (2d Cir.1988). The burden then shifts to defendant to articulate a legitimate, non-discriminatory reason for her termination. *Sogg,* 603 N.Y.S.2d at 23; *Maloff v. City Commission on Human Rights,* 46 N.Y.2d 908, 414 N.Y.S.2d 901, 902, 387 N.E.2d 1217, 1218 (1979). Plaintiff must then satisfy her ultimate burden of persuasion that defendant's articulated reason was a pretext for discrimination. *Sogg,* 603 N.Y.S.2d at 23.

However, "a reason cannot be proved to be a pretext for discrimination unless it is shown both that the reason was false *and* that discrimination was the real reason." *St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 515, 113 S.Ct. 2742, 2752, 125 L.Ed.2d 407 (1993) (emphasis in original). At the summary judgment stage, this means that a plaintiff faced with a properly supported motion "must establish a genuine issue of material fact ... as to whether the employer's reason for discharging her is false and as to whether it is more likely that a discriminatory reason motivated the employer to make the adverse employment decision." *Gallo v. Prudential Residential Services,* 22 F.3d 1219, 1225 (2d Cir.1994). To meet this burden, plaintiff may rely on direct or circumstantial evidence. *Id.*

Plaintiff's burden of establishing a prima facie case is "not onerous." *Burdine,* 450 U.S. at 253, 101 S.Ct. at 1093–94; *see also Woroski v. Nashua Corp.,* 31 F.3d 105, 109 (2d Cir.1994) ("[T]he burden on the plaintiff to make out a prima facie case is a modest one."). The evidence Hazeldine presented in opposition to this motion is sufficient for a reasonable jury to conclude that she was: 1) disabled, as that term is defined under state law; 2) qualified for the position, given that she was promoted to production manager after working as the assistant production manager for several years; and 3) terminated under circumstances giving rise to an inference of discrimination. Plaintiff's evidence of Slone's comments regarding her weight, as well as her detailed factual challenge to the stated reasons for her discharge, meet the *de minimis* burden of establishing

an inference of discrimination for her prima facie case. *See Gallo,* 22 F.3d at 1225.

Similarly, defendant has articulated several legitimate, non-discriminatory reasons for Hazeldine's discharge. Slone testified that he considered the late production of the October 1992 issue of the Upstate edition a serious dereliction of duty. In addition, Slone claims to have been concerned about reducing production costs given the economic downturn facing the company. Hiring Gerry Slone to replace Hazeldine as production manager at a salary of $40,000 a year, along with other cost-cutting measures, is said to have been a major step in achieving this goal. In fact, defendant alleges that evidence of its legitimate reasons is so strong, and evidence of any discriminatory intent so weak, that plaintiff has failed to create a question of fact as to whether she was fired because of her obesity.

However, an employer is not entitled to summary judgment whenever it relies upon business judgment in making an employment decision; "facts may exist from which a reasonable jury could conclude that the employer's 'business decision' was so lacking in merit as to call into question its genuineness." *Dister,* 859 F.2d at 1116; *see also Hicks,* 509 U.S. at 511, 113 S.Ct. at 2749–50 (holding that rejection of the defendant's proffered reasons will permit the trier of fact to infer the ultimate fact of intentional discrimination). Although the burden shifts back to plaintiff and becomes a burden of persuasion, I conclude that Hazeldine's evidence is sufficient to allow a reasonable jury to disbelieve defendant's articulated reasons and conclude that plaintiff was fired because she was obese.

Hazeldine alleges that in mid-October she informed Slone, prior to his inquiry about the status of the Upstate edition, that she had not yet completed the mechanicals for the October issue of the Upstate edition because she was overworked. According to Hazeldine, Slone was not concerned about the Upstate edition and refused to provide her additional help. In fact, both Hazeldine and Rosepka testified that the Upstate edition was not a priority for the company; according to both women, it was not time

sensitive, made little money for the company and was eventually printed only every other month.

In addition, Hazeldine alleges that she sincerely thought the magazines had been mailed when she informed Slone of that fact later in the month, largely because she was unaware of a mistake at the printer which delayed distribution. A letter to her from the printer, Brian Donna, corroborates the fact that a printing error delayed the mailing of the issue. Although Hazeldine admits asking the printer not to tell Slone about the delay, she denies threatening the printer and claims to have promptly informed Gerry Slone that the issue had not been mailed. In fact, Hazeldine claims that she was again assured the delay was not a problem.

Hazeldine also testified that she offered to take a pay cut in response to Slone's suggestion that financial considerations were motivating her termination, but he refused. She also points out her effective reduction of production costs and claims that Slone was aware of her success. Taking this evidence together, a reasonable jury could conclude that defendant's articulated reasons for discharging plaintiff were false. When Slone's repeated comments about Hazeldine's weight are added to the mix, a reasonable jury could also conclude that plaintiff was discharged because she was obese, particularly since one such derogatory comment was allegedly made at the moment she fired.

In sum, plaintiff has responded to defendant's motion with more than just conclusory allegations of discrimination; she has come forward with specific facts and even some corroboration. Although much of the evidence presented can be reduced to a "he said, she said" battle, it must be viewed in the light most favorable to plaintiff, with all reasonable inferences being drawn in her favor. *Wernick,* 91 F.3d at 382. As a result, I conclude that this evidence raises a genuine issue of fact as to whether plaintiff was fired because of her obesity. Accordingly, defendant's motion for summary judgment on these state law disability claims must be denied.

### 3. *Sex Discrimination under Title VII and state law.*

The *McDonnell Douglas/Burdine* framework discussed above is equally applicable to plaintiff's claims of sex discrimination under Title VII and state law. *See Chertkova v. Connecticut General Life Ins. Co.,* 92 F.3d 81 (2d Cir.1996); *Sogg,* 603 N.Y.S.2d at 23. Defendant concedes for the purposes of this motion that plaintiff has established a prima facie case of discrimination. In addition, defendant has articulated the same legitimate, non-discriminatory reasons for Hazeldine's discharge as discussed above with reference to disability discrimination. The only remaining issue is whether plaintiff has presented enough evidence for a reasonable jury to conclude that defendant's stated reasons for her discharge were false and that the real reason was sex discrimination.

I conclude that plaintiff has indeed produced sufficient evidence to create a genuine issue of fact as to the reasons for her termination. Plaintiff has presented detailed evidence to support her claim that she was an excellent production manager who was quite successful in reducing production costs for the company. Hazeldine also offered to take a paycut which Slone refused, despite the fact that he was supposedly concerned about costs. In addition, Hazeldine's testimony, together with Rosepka's, indicates that the incident involving the late production of the October 1992 issue of the Upstate edition may not have been considered the serious dereliction of duty that Slone claims. From this evidence, a reasonable jury could conclude that defendant's reasons for terminating plaintiff were false.

In addition, both Rosepka and Hazeldine testified to a pervasive atmosphere at Beverage Media in which women were treated less favorably than men and viewed in a stereotypical fashion. Hazeldine was originally told that Slone wanted to hire a man for her job. When she became production manager, she was given far fewer benefits than her male predecessor and denied the direct access to Slone that he had enjoyed. Several other women in managerial roles were terminated or quit shortly after Hazeldine was fired. Plaintiff's evidence also included sev-

eral specific comments allegedly made by Slone in which he said he felt "surrounded" by women, believed that women's reactions were "hysterical," admonished Rosepka to be more "friendly," and thought that there were "too many women running things."

Although defendant points out that none of these comments were made in connection with Hazeldine's termination, a fact finder could reasonably conclude that a company president who makes such comments is likely to discriminate on the basis of an employee's gender. *See Chertokova,* 92 F.3d at 92. As a result, I conclude that plaintiff has shown the existence of factual disputes which must be resolved at trial. Accordingly, defendant's motion for summary judgment is denied as to plaintiff's claims for sex discrimination under Title VII and state law.

## PLAINTIFF'S MOTION TO AMEND THE COMPLAINT

Plaintiff requests permission to amend her complaint to add Slone as an individual defendant on her claims for sex and disability discrimination under section 296 of the New York Executive Law. Plaintiff's counsel claims that he first learned of Slone's ownership interest in Beverage Media, a prerequisite to a discrimination claim against an individual under the Executive Law, during Slone's deposition in May 1995. Accordingly, plaintiff claims that she is not guilty of undue delay in bringing this motion and asserts that neither Slone or Beverage Media will be prejudiced by allowing the amendment at this time. Defendant suggests that plaintiff knew of Slone's ownership interest well in advance of his deposition and concludes that there is no justifiable excuse for the delay.

Under Federal Rule of Civil Procedure 15(a) leave to amend a pleading "shall be freely given when justice so requires." In *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962), the Supreme Court concluded that leave should normally be granted under Rule 15(a) absent:

> "any apparent or declared reason—such as undue delay, bad faith or dilatory motive

on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc."

*Foman,* 371 U.S. at 182, 83 S.Ct. at 230; *see also State Teachers Retirement Board v. Fluor Corp.,* 654 F.2d 843, 856 (2d Cir.1981) ("Reasons for proper denial of leave to amend include undue delay, bad faith, futility of the amendment, and perhaps most important, the resulting prejudice to the opposing party.").

According to plaintiff's version of the facts, there was a delay of only six months between counsel's discovery of the basis for an individual claim against Slone, that is, his ownership of Beverage Media, and the submission of this motion to amend. Although skeptical that this story is true, defendant also claims that plaintiff's delay of even six months is unjustifiable and undue. However, "mere delay, without a showing of bad faith or undue prejudice, does not provide a basis for a district court to deny the right to amend." *Fluor,* 654 F.2d at 856; *see also Block v. First Blood Assocs.,* 988 F.2d 344, 350 (2d Cir.1993). Thus, in addition to undue delay, plaintiff must be guilty of bad faith or defendant must be prejudiced by the amendment to justify denying leave to amend.[6]

I conclude that neither of these conditions exists. Although defendant may attempt to infer bad faith from plaintiff's delay in asserting this motion, any such inference that could be drawn on this record is not strong enough to deny leave to amend on that basis. In addition, defendant has not brought any prejudice to the Court's attention and I do not find any on this record. To determine whether the opposing party would be unduly prejudiced by the proposed amendment, a district court should:

> "consider whether the assertion of the new claim would: (i) require the opponent to

---

**6.** Leave to amend may also be denied if it would be futile to add the proposed claim. *See Foman,* 371 U.S. at 182, 83 S.Ct. at 230. Defendant does not argue that a claim against Slone as an individual under *state* law would be futile. *See Tomka v. Seiler Corp.,* 66 F.3d 1295, 1317 (2d Cir. 1995).

expend significant additional resources to conduct discovery and prepare for trial; (ii) significantly delay the resolution of the dispute; or (iii) prevent the plaintiff from bringing a timely action in another jurisdiction."

*Block,* 988 F.2d at 350. *See, e.g., Fluor Corp.,* 654 F.2d at 856 (finding no prejudice where proposed claim was an object of discovery and no trial date had been set). Since Slone was the primary actor for Beverage Media, it is unlikely that any additional discovery or trial preparation would be necessary if a claim against Slone as an individual is added to plaintiff's complaint. In addition, allowing this amendment will not delay the resolution of the dispute since a trial date has not yet be established. Thus, regardless of whether a delay of six months should be considered undue in the circumstances of this case, there is no evidence of bad faith by plaintiff or prejudice to defendant. Accordingly, plaintiff's motion for leave to amend her complaint is granted.

## JURISDICTION OVER STATE CLAIMS

■ Defendant suggests that the Court should decline to exercise jurisdiction over plaintiff's state law claims if the Court grants summary judgment for defendant on plaintiff's discrimination claims under the ADA and Title VII. Although I conclude that summary judgment for defendant is warranted as to plaintiff's ADA claim, the same cannot be said for plaintiff's claim under Title VII. Since the Court has original jurisdiction over the Title VII claim, I conclude that none of the discretionary grounds for declining supplemental jurisdiction exists in this case. *See* 28 U.S.C. § 1367(c). In addition, the facts and circumstances surrounding plaintiff's claim of sex discrimination are so closely related to her state law claims for disability discrimination that it would be a waste of valuable resources to require plaintiff to re-assert her state law claims in state court. Accordingly, this Court will continue to exercise supplemental jurisdiction over plaintiff's state law claims. *See* 28 U.S.C. § 1367(a).

*CONCLUSION*

Accordingly, summary judgment is granted to defendant as to Count One of the complaint, plaintiff's claim under the ADA, and that count is dismissed. Defendant's motion is denied as to Counts Two and Three, plaintiff's state law claims for disability discrimination, and Counts Seven, Eight and Nine, plaintiff's claims for sex discrimination under federal and state law. The Court accepts plaintiff's withdrawal of Counts Four, Five and Six and those counts are hereby dismissed. Plaintiff's motion to amend her complaint by adding William Slone as an individual defendant on the state law claims is granted. Plaintiff is directed to file and serve an amended complaint consistent with this opinion within twenty days of the date of this opinion.

All parties are directed to appear for a status conference on February 7, 1997 at 2:30 pm in Room 17C, 500 Pearl St.

It is SO ORDERED.